UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CR-00557 HEA |
| | ) |
| VIVIAN CARBONE-HOBBS, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES MOTION *IN LIMINE* TO ADMIT
CONVICTION AND ADMISSIONS OF VIVIAN CARBONE-HOBBS PURSUANT
TO FED.R.EVID. 801(d)(2) AND 404(b)**

Comes now the United States of America, by Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Gwendolyn E. Carroll, Assistant United States Attorney for said District, and herein respectfully requests that this Court admit Defendant Vivian Carbone-Hobbs' ("Defendant Carbone") 2005 conviction for misprison of a felony in Cause No. 4:05-CR-696 CEJ pursuant to Fed.R.Evid. 404(b), or, in the alternative, 801(d)(2), as well as admissions made in the factual basis of Defendant Carbone's 2005 plea agreement. Should Defendant Carbone assert at trial that she did not know or understand that injections could only be performed under the supervision of a medical doctor, or that she did not understand that injections by unqualified persons could not be billed as face-to-face patient visits, the United States will further seek, pursuant to Fed.R.Evid. 801(d)(2), admission of statements made by Defendant Carbone in two 2004 interviews with federal law enforcement agents in connection with the 2005 prosecution. The United States also moves to permit cross-examination of Defendant Carbone as to her 2005 conviction pursuant to Fed.R.Evid. 609, should she testify.

1

**FACTUAL BACKGROUND**

As the Superseding Indictment in this matter alleges, beginning in approximately 2011 and continuing through in or about 2019, Defendant Carbone conspired to, *inter alia*, defraud health care benefit programs by submitting false claims for reimbursement and to engage in a scheme to defraud the Social Security Administration. Doc. No. 238 at Count 1. The Superseding Indictment further charges Defendant Carbone with 13 counts of executing a health care fraud scheme in violation of 18 U.S.C. § 1347 by causing the submission of claims for payment to healthcare benefit programs for services not rendered, not medically necessary, or provided by an unqualified person.

At trial, the United States intends to offer evidence that during the timeframe of the alleged scheme, Defendant Carbone caused her patients to receive injections and IV infusions containing prescription drugs, without supervision by a licensed medical doctor, and further, that she caused the submission of reimbursement claims to insurance providers for services not rendered, including face-to-face patient visits, when neither she nor co-defendant Thomas Hobbs ("Hobbs") had in fact met face-to-face with the patients. Many of the IV infusions were performed by co-defendant Clarissa Pogue, who was not licensed to perform those infusions. During many of the sessions fraudulently billed as "face-to-face" patient visits, Power Med patients were in fact receiving IV infusions from unqualified individuals without the supervision of a medical doctor. The United States will also offer evidence that although Defendant Carbone and co-defendant Hobbs retained Dr. Eugene Hansbrough, a licensed medical doctor, ostensibly as the clinic's "medical director," Hansbrough did not supervise or authorize any of the medical procedures, including injections and IV infusions.

In 2005, Defendant Carbone was convicted in Cause No. 4:05-CR-696 CEF of one count of misprison of a felony in violation of 18 U.S.C. § 4. Defendant Carbone executed a signed plea agreement in connection with that conviction. In the factual basis of the plea agreement, Defendant Carbone admitted the following:

> Defendant and her husband are chiropractors who operated a chiropractic clinic in Arnold, Missouri and a chiropractic clinic in St. Louis, Missouri. These businesses were operated and organized under the names Physicians Health Services (PHS) and Power-Med, Inc. Defendant's husband, through PHS, hired a series of medical doctors to provide medical services at both locations. The stated purpose for hiring medical doctors was to allow each clinic to provide "comprehensive" medical treatments for its patients. The billing for the medical services and the chiropractic services were exclusively performed by employees of the defendant and her husband.
> With the addition of the medical doctors on staff, an expanded list of procedures became available to patients. One example of the additional procedures that became available was trigger point injections. Trigger point injections are a pain relieving procedure that can only be administered by a medical doctor. Chiropractors are not licensed to administer trigger point injections. Defendant became aware that trigger point injections were being administered by her husband who was not a medical doctor and also became aware that billings were being submitted to insurance companies by others that falsely stated that a physician had administered the trigger point injections. In addition, defendant also became aware that other billings were submitted to insurance companies falsely stating that medical services had been provided by a physician when in fact they were provided by other personnel.
> Defendant acknowledges that these billings constitute a felony under Title 18, United States Code, Section 1035 – False Statement Related to Health Care Matters. Defendant became aware of the billings from PHS and did not report or notify any authority. In addition, defendant affirmatively attempted to conceal these billings. When patients inquired as to the accuracy of the PHS billings, defendant indicated to patients that the billings were proper because the non-physician personnel were authorized to provide the medical services.

Doc. No. 5, Cause No. 4:05-CR-696 CEJ (attached as Exhibit 1). As part of the investigation that resulted in Defendant Carbone's conviction, on March 4, 2004, Defendant Carbone, in the presence of her counsel, Scott Rosenblum, was interviewed by federal agents and then-Assistant United States Attorney Matt Schelp. During her first interview, as reflected in the report of that

interview, Defendant Carbone was advised that her false statements or statements that she made that day but later changed could be used against her at a subsequent trial.  During her March 2005 interview, Defendant Carbone admitted the following:

> Carbone is licensed as a chiropractor by the State of Missouri. Carbone and her husband Thomas Hobbs operate Power Med. Until November 2003, she and her husband operated two chiropractic clinics under the name of Power Med. They now work together at Carbone's clinic.  At times, Hobbs and Carbone hired licensed medical doctors to provide services, such as injections, that chiropractors were not authorized to perform. In 2002, one of the medical doctors hired to perform services was absent from PowerMed for four to five weeks, after having a heart attack. During that time when the medical doctor was absent, Carbone administered injections to 15 to 20 different patients.  Carbone now understands that as a chiropractor she is not allowed to give trigger point injections to patients. After the medical doctor returned to PowerMed, Carbone gave trigger point injections to approximately 15 patients.
> Carbone has reviewed the monthly insurance billing reports and seen that the billing clerk was billing insurance companies for trigger point injections given by Carbone. During her review of the monthly insurance billing, Carbone learned that the Power Med billing clerk was billing insurance companies for face-to-face patient visits performed by Carbone as if they had been performed by Dr. A under the name Physician Health Services [the company set up by Carbone and Hobbs to process all of the billings performed by Power Med].

During her April 7, 2004 interview, at which Defendant Carbone was also represented by counsel who was present, Defendant Carbone admitted the following:

> The interviewing FBI agent showed Dr. Carbone-Hobbs "Patient Statement Reports" that reflected 13 trigger point injections by Dr. M., a licensed medical doctor, on days Dr. M. was not in the office. The Patient Statement Reports also reflected a large number of face-to-face visits by licensed medical doctors when the doctors were not in the office:
> - July 31, 2001 to November 3, 2003 – 40 face-to-face visits by Dr. A. when Dr. A. was not in the office.
> - October 1, 2002 to November 6, 2002 – 30 face-to-face visits by Dr. R. when Dr. R. was not in the office.
> - November 7, 2002 to October 30, 2003 – 72 face-to-face visits by Dr. M. when Dr. M.   was not in the office.
>
> Carbone indicated that each of those instances would have been a mistake.

4

The United States provided to counsel for Defendant Carbone on April 28, 2022, notice of its intent to use evidence of Defendant Carbone's 2005 conviction, and notice of its intent to offer evidence of the conviction and Defendant Carbone's admissions on January 14, 2023. The United States submits that the probative value of both the 2005 conviction and the admissions made by Defendant Carbone far outweigh their potentially prejudicial impact, and are properly admitted through Fed.R.Evid. 404(b) and, as to the admissions, pursuant to 801(d)(2).

## ARGUMENT

**I.  Fed.R.Evid. 404(b) is a Rule of Inclusion that Permits Admission of Prior Bad Acts to Establish Knowledge, Intent, and Absence of Mistake or Accident.**

Rule 404(b) of the Federal Rules of Evidence prohibits admission of prior convictions and "bad acts" simply to show a propensity to commit a charged offense, but does permit such evidence to be admitted for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The Eighth Circuit Court of Appeals has explained the scope of admissibility of evidence pursuant to Rule 404(b), which it has held to be a "rule of inclusion," as follows: "[T]he evidence of prior crimes must be 1) relevant to a material issue; 2) similar in kind and not overly remote in time to the charged crime; 3) supported by sufficient evidence; and 4) such that its potential prejudice does not substantially outweigh its probative value." *United States v. Crenshaw*, 359 F.3d 977, 998 (8th Cir. 2004); *accord United States v. Lakoskey*, 462 F.3d 965, 979-80 (8th Cir. 2006), as amended on reh'g (Oct. 31, 2006) (reiterating that Rule 404(b) is a rule of inclusion and that evidence is admissible under Rule 404(b) if it satisfies the same four-factor test).

Thus, the Eighth Circuit Court of Appeals will reverse admission of purported Rule 404(b) evidence "'only when such evidence *clearly had no bearing on the case* and was introduced solely

5

to prove the defendant's propensity to commit criminal acts.'" *United States v. Marquez*, 462 F.3d 826, 830 (8th Cir. 2006) (emphasis added) (quoting *United States v. Thomas*, 398 F.3d 1058, 1062 (8th Cir. 2005), with internal quotations omitted). "When admitted for the purpose of showing intent, the prior acts need not be duplicates, but must be sufficiently similar to support an inference of criminal intent." *United States v. Burkett*, 821 F.2d 1306, 1309 (8th Cir. 1987). A district court may issue a cautionary instruction to the jury to advise it of the purposes for which it may consider such evidence. *Id.*

## II. Evidence of Prior Fraud Convictions Has Repeatedly Been Held Admissible to Show Knowledge, Intent, and Absence of Mistake or Accident.

The Eighth Circuit has repeatedly held that in fraud cases, such as the present one, evidence of a defendant's conviction for prior fraudulent conduct is admissible pursuant to Fed.R.Evid. 404(b) to establish intent, absence of mistake or accident, and knowledge. In *United States v. Washburn*, the defendant was charged with wire fraud, money laundering, and making false statements. 728 F.3d 775, 784 (8th Cir. 2013). The Eighth Circuit affirmed the district court's admission of the defendant's prior conviction for wire fraud and money laundering, reasoning that "the prior conviction entailed a scheme *almost identical to the charged schemes* and would thus be probative of motive, intent, plan, identity, and absence of mistake." *Id.* (emphasis added). The Court noted that "[r]elevant here, this court has held in similar circumstances that the unfair prejudice did not substantially outweigh the probative value of a defendant's prior conviction for similar schemes because the close similarity of the prior incidents made the evidence especially probative on the question of the defendant's intent and the absence of accident." *Id.* *See also United States v. Pollnow*, 48 F.3d 1225 (8th Cir. 1995) (finding no error in admission of two prior convictions in mail and wire fraud trial of two prior criminal convictions where prosecution read

6

indictments to the jury and indicated defendant had pled guilty to each charge); *United States v. Totaro*, 40 F. App'x 321, 322 (8th Cir. 2002) (aff'ing district court's admission of mail fraud conviction the defendant was charged with operating "an 'advance fee' scheme in which he bilked investors out of millions of dollars" as proof of the absence of mistake or accident.).

In *United States v. Edelmann*, 458 F.3d 791, 799 (8th Cir. 2006), the defendant was charged with mail fraud, wire fraud, and money laundering, in connection with misrepresentations to a business lender and a home loan fraud. At trial, the district court admitted, pursuant to 404(b), Edelmann's three prior convictions – all of which were 15 years old. The first conviction, which was from 1989, related to Edelmann's giving of a false name, address, and Social Security number to the Internal Revenue Service, and the second was for theft from a financial institution relating to the defendant's use of a forged check, and the third was for attempted escape from federal custody, relating to the defendant's fabrication of court orders indicating her sentences had been vacated. The district court found that all three convictions were admissible to show intent, and the Eighth Circuit concurred, finding that despite the 15 year-age of the convictions, they "were not too remote in time because of their similarities with the crime charged," and further, that the circumstances of the attempted escape conviction, which included fabricating court orders, "demonstrates the same method of deception she used in the present case." *Id.*

**III. Defendant Carbone's 2005 Conviction for Conduct Almost Identical to the Charged Schemes is Admissible Pursuant to 404(b) to Show knowledge, Intent and Absence of Mistake or Accident.**

In the present case, as in both *Washburn* and *Edelmann*, Defendant Carbone is alleged to have committed offenses that are almost identical to the conduct giving rise to her 2005 conviction. In the present case, Defendant Carbone is alleged to have caused the submission of reimbursement

7

claims to health insurance companies for services not rendered, including face-to-face patient visits which were not performed, as well as having caused her patients to receive injections and IV infusions without the supervision of a qualified person, to wit, a licensed medical doctor.  As the factual basis of Defendant Carbone's 2005 plea agreement makes clear, her 2005 conviction relates to her concealment of the fact that Power Med patients were receiving injections from individuals who were not qualified to administer those injections, including her husband, without the supervision of a licensed medical doctor, and further, that health insurance companies were being billed for services not actually provided by a medical doctor.  Just as in *Edelmann*, Defendant Carbone's conviction relates to "the same method of deception she [is alleged to have] used in the present" and thus, should be admissible pursuant to Fed.R.Evid. 404(b).

Defendant Carbone's 2005 conviction involved her explicit acknowledgement that chiropractors were prohibited from performing injections, and that it was a crime to bill an insurance company for services supposedly performed by a medical doctor when in fact those services had not been performed by a medical doctor.  In the present case, Defendant Carbone is alleged to have caused insurance companies to be billed for face-to-face patient visits, when what had actually occurred was patients receiving injections and IV infusions without the supervision of a medical doctor and without Defendant Carbone having conducted an actual face-to-face patient visit.  This evidence is highly probative to show Defendant Carbone's intent and knowledge in the present case, specifically, her knowledge that a chiropractor was not permitted to perform injections, nor was it legally permissible to bill for a face-to-face patient visit when no such visit had occurred, and her intent to cause the submission of bills she knew to be fraudulent.

Further, in the present case, Defendant Carbone may attempt to argue that Power Med's

8

retention of medical doctor Dr. Eugene Hansbrough as Power Med's "medical director" caused her to believe that it was permissible to have unlicensed persons perform injections and IV infusions on her patients. In the 2005 case, as Defendant Carbone acknowledged in her plea agreement, Power Med had also retained medical doctors, but those medical doctors had not performed the injections for which Power Med was billing. Thus, the 2005 conviction is also relevant to establish the absence of mistake or accident on the part of Defendant Carbone when subjecting her patients to injections by an unlicensed person.

Also as in *Edelmann*, in which the convictions were 15 years-old, the age of Defendant Carbone's conviction is no bar to its admissibility. The Eighth Circuit "applies a standard of reasonableness, as opposed to a standard comprising an absolute number of years, in determining whether a prior offense occurred within a relevant time frame for purposes of Rule 404(b)." *United States v. Green*, 151 F.3d 1111, 1113 (8th Cir. 1998). Here, the conviction is from 2005, six years prior to the commencement of the charged scheme, which is far less remote in time than cases in which the Eighth Circuit has held that timeliness was no bar to 404(b) admissibility. *See United States v. Hardy*, 224 F.3d 752, 757 (8th Cir. 2000) (affirming admission of convictions occurring 6 years prior to arrest in present case, noting that "[w]ith respect to remoteness in time, we apply 'a standard of reasonableness, as opposed to a standard comprising an absolute number of years,' for the purposes of Rule 404(b)") (internal citations omitted). *See also Green*, 151 F.3d at 1113 (citing Eighth Circuit cases permitting introduction of Rule 404(b) evidence despite separations in occurrences of offenses ranging from twelve to seventeen years). Additionally, as precedent recognizes, given the similarity between the charged conduct and the conduct of conviction, any remoteness in time is tempered by the high degree of similarity between the prior

9

bad act and the charged conduct.

The United States intends to offer evidence of the 2005 conviction in the form of the certified conviction itself, and by reading into the record, through counsel for the United States, the factual basis of Defendant Carbone's 2005 plea agreement. Because the defendant's 2005 conviction is probative of her knowledge, intent, absence of mistake or accident, and involves conduct extremely similar to the charged conduct in the present case, the United States respectfully requests that this Court permit the United States to admit evidence of that conduct pursuant to 404(b).[1]

### IV. Defendant Carbone's Previous Statements Are Admissible Pursuant to Both Rules 404(b) and 801(d)(2).

In her 2004 interviews, Defendant Carbone was represented by counsel and provided information regarding her administration of injections to Power Med patients, as well as her

---

[1] In the present case, where the conduct at issue is so closely tied to the conduct connected to Defendant Carbone's 2005 conviction, Defendant Carbone's admissions in her 2005 Plea Agreement, particularly her statement acknowledging that chiropractors are not permitted to give trigger point injections, are admissible as statements of a party opponent. The Eighth Circuit has held that where a defendant's prior conviction constitutes an admission as to the conduct that is the subject of the present prosecution, a defendant's guilty plea may itself be admissible, not as 404(b) evidence, but as a statement by a party opponent pursuant to Fed.R.Evid. 801(d)(2). In *United States v. Riley*, 684 F.2d 542, 545 (8th Cir. 1982), the Eighth Circuit held that the district court had correctly determined that the defendant's state misdemeanor conviction for pimping was admissible pursuant to Fed.R.Evid. 801(d)(2), where the defendant was charged with a violation of the Mann Act arising from the same conduct that resulted in the state conviction. *See also United States v. Holmes*, 794 F.2d 345, 349 (8th Cir.1986) (admitting prior plea of guilty to state charge of theft by receipt of stolen property as an admission by a party opponent under 801(d)(1) in a subsequent collateral federal case); *United States v. Williams*, 104 F.3d 213, 216 (8th Cir.1997) (affirming admission of state court guilty plea, but noting that admissibility of plea required that previous plea be voluntary). In *United States v. Borders*, No. 4:12-CR-0386-01-DGK, 2014 WL 556329, at *2 (W.D. Mo. Feb. 12, 2014), aff'd, 829 F.3d 558 (8th Cir. 2016), the defendant was charged with conspiracy, and one of the alleged overt acts was the defendant's transportation of stolen motor vehicle parts in a particular trailer. The district court, subsequently affirmed by the Eighth Circuit, permitted the Government to admit a statement from the factual basis of the guilty plea agreement of the defendant from a previous federal prosecution. *Id.* at 1-2. In the statement from his plea agreement, the defendant acknowledged his theft of the trailer described in the overt act in the conspiracy charge for which he was on trial. The Government moved to admit that statement as an admission by a party opponent, and the Court granted the motion. The Eighth Circuit found no error, noting that there was no Double Jeopardy problem in prosecuting someone for a substantive offense later charged as an overt act in a conspiracy. United States v. Borders, 829 F.3d 558, 567 (8th Cir. 2016).

10

knowledge that face-to-face patient visits with a medical doctor had been billed to health insurance companies, despite the fact that a medical doctor was not present. At the commencement of her first interview, counsel for the United States and defense counsel explained to Defendant Carbone that the statements she made in that interview but later changed could be used against her at a subsequent trial.

Because of the protections accorded Defendant Carbone's 2004 interview statements, the United States will only seek admission of the statements in the event that at the present trial, Defendant Carbone attempts to assert, either through opening statement or examination of the witnesses, any of the following positions:

(1) that Defendant Carbone believed she was permitted to perform injections;

(2) that Defendant Carbone believed that co-defendant Hobbs was permitted to perform injections;

(3) that she believed having a medical doctor on staff was sufficient to permit unqualified persons to perform injections;

(4) that she is unfamiliar with medical billing, or unaware of Power Med's medical billing practices.

(5) that she believed it was permissible to bill health insurance companies for a face-to-face patient visit when a patient was receiving an injection from an unqualified person.

Should Defendant Carbone offer any argument or evidence as to those points, the United States should be permitted, pursuant to Fed.R.Evid. 801(d)(2), to admit the testimony of retired FBI Special Agent Alan Luvin, who conducted the interviews of Defendant Carbone in 2004, as to Defendant Carbone's statements which would directly contradict those assertions, specifically:

(1) Defendant Carbone knew that chiropractors, which both she and co-defendant Hobbs are, are not permitted to perform injections;

(2) that it was "wrong" to give injections to patients if a medical doctor was not present,

(3) that she was familiar with the billing practices of Power Med;

(4) that she had reviewed monthly billing reports for Power Med reflecting face-to-face patient visits falsely billed as if a medical doctor had performed the visits;

(5) it was "wrong" to bill insurance companies for procedures not actually performed by a medical doctor.

Because these five statements by Defendant Carbone's would directly contradict any of the defense positions articulated above, the United States should be permitted to admit evidence of those statements pursuant to Fed.R.Evid. 801(d)(2).

## V. The United States Should be Permitted to Cross-Examine Defendant Carbone Regarding her 2005 Conviction and the Conduct Underlying It.

The United States of America moves this Court to allow it, at trial, to cross-examine Defendant Carbone by using evidence of prior convictions pursuant to Federal Rule of Evidence 609. The United States is legally permitted to use a defendant's prior felony convictions to cross-examine the defendant should the defendant testify at trial. In the present case, the United States provided notice on April 28, 2022, to counsel for Defendant Carbone of its intention to cross-examine her regarding her conviction. The United States supplemented that notice with a detailed 404(b) disclosure on January 14, 2023, regarding Defendant Carbone's 2005 conviction and the statements she made to investigators in connection with that case. Because the probative value of that conviction outweighs its prejudicial effect, for all the reasons articulated *supra*, the United States requests that if defendant Carbone testifies, this Court allow the United States to inquire

and/or introduce evidence of her felony conviction.

Pursuant to Fed.R.Evid. 609(b), if the conviction (or the release of the witness from the confinement imposed for that conviction) occurred more than ten years before trial, which the conviction in this casedid, the Court must determine whether the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect, and the party offering the evidence must give his opponent advance written notice. *United States v. Eagle*, 515 F.3d 794, 804 (8th Cir. 2008) (citing Fed. R. Evid. 609). In other words, "prior convictions are admissible for impeachment purposes and . . . . any criminal defendant who takes the stand may be cross examined about his prior felony convictions." *United States v. Buchanan*, 659 F.2d 878, 879 (8th Cir. 1981); *United States v. Finch*, 842 F.2d 201 (8th Cir. 1988), *cert. denied*, 487 U.S. 1239, 108 S. Ct. 2911 (1988) (felon in possession).

The trial court has broad discretion in determining whether to admit evidence of concerning a prior conviction. *United States v. Wesley*, 990 F.3d 360, 365, 366 (8th Cir. 1993) (citations omitted); *United States v. Hood*, 748 F.2d. 439, 441 (8th Cir. 1984). The weighing of the probative value against the prejudicial effect when evidence of a prior conviction is more than ten years old is offered for the purpose of attacking the credibility of a witness is similarly committed to the sound discretion of the trial court. *United States v. Foley*, 683 F.2d 273 (8th Cir. 1982).

Here, should the defendant testify, the United States expects she will offer evidence directly contradictory to that offered by the Government's witnesses. This will make her credibility an important factor in the case. *See United States v. Walker*, 817 F.2d 461, 463 (8th Cir. 1983) (citations omitted). Where the resolution of a defendant's guilt or innocence would depend in significant measure upon the credibility of the various witnesses, the jury is entitled to consider

13

the defendant's other felonious conduct to resolve that conflict.  *See United States v. Collier*, 527 F.3d 695 (8th Cir. 2008) (admission of the nature of defendant's predicate felony, the sale or receipt of an access card to defraud, was warranted as impeachment evidence in felon in possession prosecution as defendant's credibility was central to the issue of whether he knowingly possessed the firearm); *United States v. Chauncey*, 420 F.3d 864 (8th Cir. 2005) (evidence of defendant's prior conviction for distribution of a controlled substance was admissible in trial for possession with intent to distribute marijuana because it was probative of the defendant's credibility); *United States v. Bogers*, 635 F.2d 749, 750 (8th Cir. 1980); *United States v. McMillan*, 535 F.2d 1035 (8th Cir. 1976) (once defendant denied participating in robbery and controverted all testimony concerning his exchange of traveler's checks for cash, prosecution's use of prior conviction for robbery for purposes of impeachment on cross-examination was proper).

Once a defendant becomes a witness on her own behalf, the United States is entitled to impeach her testimony and attack her credibility with the fact of her prior convictions.  *United States v. Brown*, 956 F.2d 782 (8th Cir. 1992).   In the present case, as articulated above, Defendant Carbone's conviction relates to conduct almost identical to the conduct that is the subject of the present case, and conduct that occurred only six years prior to the commencement of the charged conspiracy.  The 2005 conviction is probative as to Defendant Carbone's knowledge, intent, and familiarity with permissible chiropractic practices and billing procedures.  As a procedural matter, the United States respectfully requests that, should defendant testify, the Court make an explicit finding on the record that the probative value of the convictions outweighs their prejudicial effect and that the Court provide some indications of the reasons for its findings.

## VI. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant its motion *in limine* to admit evidence of Defendant Carbone's 2005 conviction and her admissions in her 2005 plea agreement, as well as her 2004 interview statements, should Defendant Carbone offer argument or evidence in contradiction of her admissions during her 2004 interviews.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


*/s/  Dorothy L. McMurtry*
DOROTHY L. McMURTRY, #37727MO
TRACY BERRY
DIANE KLOCKE
Assistant United States Attorneys
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200


**CERTIFICATE OF SERVICE**

Copy of the foregoing was served electronically through the electronic case filing system to counsel of record this 20th day of January, 2023.

*/s/  Dorothy L. McMurtry*
DOROTHY L. McMURTRY, #37727MO

15